## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WEB.COM GROUP, INC.,

     Plaintiff,

v.                                        Civil Case No.: 3:14-cv-1374-J-25-JRK

MOBILE PROMOTIONS NETWORK, LLC, et al.,

     Defendants.

_____/

## PLAINTIFF WEB.COM'S RESPONSE TO
## DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff Web.com Group, Inc. ("Web.com" or "Plaintiff") hereby replies to Defendants' ("Defendant") Motion for Sanctions (the "Motion") [Dkt. 30],[1] which is baseless and should be denied for the following reasons:

1. Plaintiff's claims are factually and legally justified, not objectively frivolous;

2. Defendant improperly relies on hindsight and seeks to sanction Plaintiff for failing to withdraw or amend a motion based on evidence that was not available to Plaintiff until months after it was filed; and

3. Defendant did not file its Motion until after this Court denied Plaintiff's challenged motion, thereby depriving Plaintiff of the benefit of Rule 11's safe harbor provision.

Plaintiff should be awarded to its reasonable expenses, including attorney's fees, incurred to respond to these salacious accusations of unethical and unprofessional conduct.

---

[1] Consistent with this Court's usage, *see* [Dkt. 28] at 1 n. 1, Plaintiff shall refer to Defendants as Defendant.

## Summary of Argument

Defendant's Motion is off-point in all respects; it mischaracterizes Plaintiff's legal theory, it is unsupported, and it untimely demands that Plaintiff withdraw a motion that the Court has already denied. Plaintiff's unfair competition claim is not limited to allegations that Defendant is using Plaintiff's name or mark to sell Defendant's services. Plaintiff alleges that Defendant's telemarketing agents are contacting small businesses that recently hired Plaintiff for their website design and marketing services and falsely implying that Defendant has a pre-existing relationship with the customers to persuade them to purchase online directory listings. This deceptive practice, which is recognized by the FTC as "The Directory Listing Scam", is likely to confuse small business owners as to the source of the calls and damage Plaintiff's reputation. As this Court acknowledged, Plaintiff submitted evidence during the hearing that Defendant suggested an existing relationship and actually confused some customers; Plaintiff's factual allegations are well-founded. Plaintiff's legal theories are equally supported, including by several FTC opinions where district courts enjoined defendants from using identical language — "verify" and "confirm" — to falsely imply an existing relationship.

Inexplicably, Defendant filed its Motion and continued to mischaracterize Plaintiff's position even after this Court corrected Defendant as to the nature of Plaintiff's claim during the hearing. But even if Defendant accurately framed Plaintiff's theory, which it did not, Defendant's allegations of impropriety are unsupported by any legal authority and squarely conflict with the plain language of the Lanham Act and Eleventh Circuit precedent. And, because Defendant filed this Motion *after* this Court denied Plaintiff's Motion, it is Defendant that has wasted judicial resources and caused Plaintiff to unnecessarily incur fees and costs.

## Procedural Background

Plaintiff filed its Motion for Preliminary Injunction ("Plaintiff's Motion") [Dkt. 3] on November 6, 2014. Defendant filed its Response [Dkt. 12] on December 12, 2014, and Plaintiff filed its Reply [Dkt. 17] on January 13, 2015. More than three months later, on February 10, 2015, the day before a planned settlement conference, Defendant served the Motion. On February 17, 2015, this Court held an evidentiary hearing on Plaintiff's Motion. *See* [Dkt. 29]. On February 24, 2015, this Court entered an Order [Dkt. 28] denying Plaintiff's Motion. Defendant filed the Motion on March 10, 2015, two weeks after the Motion was denied. The parties have not exchanged discovery, or taken depositions, and the discovery deadline is not until August 3, 2015.

## Argument

### I.      Plaintiff's claims are not objectively frivolous.

Rule 11 sanctions "are reserved as *punishment* for those litigants who blatantly abuse the Court's resources—they will not be imposed lightly against every failing litigant." *Gelles v. Skrotsky*, 15 F. Supp. 2d 1293, 1297 (M.D. Fla. 1998) (emphasis in original). Any doubt should be resolved against finding a Rule 11 violation. *Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, No. 6:05CV1660ORL22KRS, 2006 WL 2471522, at *3 (M.D. Fla. Aug. 24, 2006). Sanctions are appropriate only if a party's claims are "objectively frivolous." *Boone v. JP Morgan Chase Bank*, 447 F. App'x 961, 965 (11th Cir. 2011). Plaintiff's claims are not.

### A.      Plaintiff's claim for unfair competition is not contingent on use of Plaintiff's mark or name, contrary to Defendant's mischaracterization.

The Motion presents a straw man argument. Defendants mischaracterize Plaintiff's claims, as they have throughout this litigation, then attack Plaintiff for failing to support

Defendant's malformed effigy. Before Plaintiff's claims can be tested for frivolity, they must be correctly understood.

Plaintiff has never tied its unfair competition claim entirely to its trademark infringement claim. As the plain language of the Complaint shows, only Count One is a trademark infringement claim, and Count Two is an unfair competition claim. Count One of its Complaint [Dkt. 1], brought pursuant to Section 32 of the Lanham Act, alleges that Defendant used Plaintiff's mark in a way that was likely to confuse Plaintiff's customers. [Dkt. 1] ¶¶ 41, 42, 48. Count Two, brought pursuant to Section 43(a) of the Lanham Act, alleges:

> USDirectory's false and misleading statements were likely to confuse and deceive — and did in fact confuse and deceive — Plaintiff's customers as to the origin of USDirectory's services and as to an affiliation, connection, or association between Plaintiff and USDirectory.

Id. ¶ 51. Count Two does not incorporate any of the allegations of Count One. Id. ¶ 50. Although the general allegations refer to Plaintiff's mark, Count Two does not; and rather than asking this Court to enjoin Defendant from infringing Plaintiff's mark, Count Two requested an injunction against "Defendant 'passing off' their services or suggesting that Defendants are affiliated with Plaintiff." See id. ¶¶ 15, 56. Count Two was intended to reach conduct not encompassed by Count One, just as Section 43(a) of the Lanham Act was intended to reach conduct not encompassed by Section 32; as Plaintiff has always argued, and this Court held, Section 43(a) of the Act bars false or misleading descriptions whether or not a trademark is infringed. See [Dkt. 3] at 8 (quoting Babbit Elec. Inc. v. Dynascan Corp., 38 F.3d 1161, 1181 (11th Cir. 1994)); [Dkt. 17] at 1-2 (same); [Dkt. 28] at 3.

In its Motion, Plaintiff argued that its Section 43(a) claim was likely to succeed for two reasons -- if the trademark infringement claim succeeded, or:

> even if it did not prevail on its trademark infringement claim. Section 43(a) is broader than Section 32, because Section 43(a) 'covers false advertising or description **whether or not it involved trademark infringement.** . . . As evidenced by countless customer complaints, USDirectory misrepresented its own services as being provided by Plaintiff or one of Plaintiff's affiliates.

[Dkt. 3] at 8 (quoting *Babbit*) (bold in original, underline added for emphasis). In arguing its second theory — "passing off" or false affiliation — Plaintiff did not rely on an allegation that Defendant used Plaintiff's mark or name.

Defendant's Response mischaracterized and conflated Plaintiff's claims, which resulted in the following absurd construction:

> This argument regards Plaintiff's trademark-infringement counts, which are Count 1 (Trademark Infringement – Section 32 of the Lanham Act, 15 U.S.C. § 1114) and Count 2 (Unfair Competition – Section 43(a) of the Lanham Act, 15 U.S.C. § 1125).

[Dkt. 12] at 3. Despite recognizing that Counts 1 and 2 allege violations of different statutes, Defendant chose not to cite any authority supporting its interpretation of Section 43(a); it relied solely on trademark infringement cases. *See* [Dkt. 12]. The absence of authority is glaring, especially when accusing fellow members of the Florida Bar of unprofessional conduct.

Similarly, when Defendant repeatedly argued that its recordings disproved Plaintiff's claims, Defendant meant that its recordings disproved Defendant's mischaracterization of Plaintiff's claim as a trademark infringement claim. For example:

> Web.com provided data on seven, [sic] purported problem-cases, all of which involved the contention that Defendants misrepresented some affiliation with Web.com to consumers. The call recordings and other data showed those contentions were patently false. "Web.com" was only mentioned in one call [in which Defendant disclaimed any affiliation with Web.com].

[Dkt. 12] at 2. The first sentence is true: Plaintiff contends that Defendant misrepresented an affiliation with Plaintiff. The third sentence is also true: Defendant did not mention "Web.com"

in those seven calls. However, these two premises do not lead to Defendant's conclusion that Plaintiff's contentions are "patently false." To reach that conclusion requires a third, missing premise — that Defendant could not have misrepresented an affiliation with Plaintiff unless Defendant mentioned "Web.com." However, whether Defendant's alleged actions – such as falsely implying a pre-existing relationship with the call recipient -- give rise to Section 43(a) liability are disputed issues.[2]

Defendant takes the position that a false affiliation claim requires a showing that Defendant mentioned Plaintiff's name or mark,[3] but the Eleventh Circuit expressly held that a Section 43(a) claim does not require that a trademark be infringed. Defendant had actual knowledge of this authority when it filed the Motion, because Plaintiff cited *Babbit* for this proposition in both its Motion and its Reply. [Dkt. 3] at 8, [Dkt. 17] at 1-2. Defendant did not attempt to distinguish *Babbit*.

Defendant's incorrect interpretation of the Lanham Act — that a Section 43(a) false affiliation claim requires the defendant to mention the plaintiff by name or mark — was further apparent during Defendant's argument at the hearing. Defendant opened its argument by stating, "**This is a case about use of Web.com's mark** — alleged use of Web.com's mark. But you haven't heard anything about that today, or at least very little." [Dkt. 29] at 44:4-6 (stating "market" instead of "mark" due to a typographical error) (emphasis added). Shortly thereafter, Defendant reemphasized that "**on none of those calls did the callers make any reference to**

---

[2] As discussed in more detail below, the Motion is a Rule 11(b)(2) motion dressed in Rule 11(b)(3) clothes. Defendant's issue is with Plaintiff's legal theory, not Plaintiff's facts, and this Motion should be resolved accordingly. Moreover, Defendant did not argue that Plaintiff's actual legal theory — false affiliation by implication — is frivolous; instead, Defendant addressed only its mischaracterization of Plaintiff's legal theory.

[3] As noted, Defendant fails to cite a single authority that supports its position.

**Web.com"** (except for one reference to disavow an affiliation). *See* [Dkt. 29] at 45:19-46:7 (emphasis added) (quoted *infra*).

Similarly, when Defendant argues in the Motion that Plaintiff's claims lack any basis in fact, Defendant relies on Plaintiff's failure to show that Defendant mentioned by name, and unilaterally redefines "passing off" to support its position. *See* [Dkt. 30] at 1 (defining "passing off" as **"using the Web.com mark and name** during sales calls.");[4] *id.* at 3 ("These recordings soundly and unequivocally refute the contention that Defendants are 'passing off' USDirectory as Web.com. Indeed, **Web.com is seldom mentioned.**") (emphasis added to all cites), 5 (stating that Web.com **"never comes up"** in four of five call recordings, echoing Defendant's position in its Response), 7 ("Without examining the detail of each call, **but rather simply by reviewing whether Web.com was even mentioned**, and whether the caller identified that they were with USDirectory, Defendants were able to reduce the number of potentially wrongful incidents in Web.com['s] Spreadsheet by 75%.").[5]

It is clear the parties are applying the applicable law differently. But rather than move for dismissal or summary judgment, Defendant accused Plaintiff of unethical conduct — an extreme and disfavored approach, and an ironic one as Defendant misstated the law and failed to support its allegation with any legal authorities. Plaintiff is not the party abusing this Court's resources; its claims are valid and supportable.

---

[4] Defendant cited no authority supporting its redefinition of "passing off," and the plain language of Section 43(a) encompasses false **or misleading** descriptions. *See* 15 U.S.C. § 1125. (emphasis added)

[5] Defendant apparently also takes the position that self-identification is an absolute defense to a Section 43(a) claim, which makes little sense in the context of a false "affiliation, connection, or association of such person **with another person.**" *See* 15 U.S.C. § 1125 (emphasis added). Defendant again fails to cite any authority supporting this position.

**B.      Plaintiff's legal theory is not objectively frivolous.**

Defendant has never argued that Plaintiff's actual legal theory — that Defendant made misleading statements that falsely implied affiliation under the circumstances, not that Defendant expressly claimed affiliation by mentioning Plaintiff's name or mark — is frivolous. Because Defendant did not identify Plaintiff's legal theory or challenge it in its Motion, Defendant is not entitled to sanctions pursuant to Rule 11(b)(2). *See* Fed. R. Civ. P. 11(c)(1) (requiring due process); 11(c)(2) (requiring movant to describe the specific conduct that allegedly violates Rule 11). Nonetheless, out of an abundance of caution, Plaintiff addresses the non-frivolity of its legal claim below.

Rule 11 is intended to deter frivolous lawsuits, not deter novel legal arguments. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998); *see also* Fed. R. Civ. P. 11, Advisory Committee Notes to 1983 Amendments (hereinafter, "1983 Comm. Notes") ("The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."). Sanctions may be appropriate when an applicable statute's plain language or case law clearly precludes relief. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). However, Subdivision (b)(2) permits "[a]rguments for extensions, modifications, or reversals of existing law or for creation of new law," even if not labelled as such, so long as the arguments are "nonfrivolous." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments (hereinafter, "1993 Comm. Notes). The standard for frivolity is objective, but "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated." *Id.*

Unlike Defendant, Plaintiff researched the issues and found support for its theory of false affiliation in Section 43(a)'s plain language; numerous cases interpreting Section 43(a); and in Federal Trade Commission cases and agency material.

> **1.    The plain language of the Lanham Act supports Plaintiff's theory.**

Section 43(a) provides, in relevant part:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
>
> …
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. The statutory language encompasses the use in commerce of any "word, term, name, symbol, or device, or any combination thereof" or a false or misleading description or representation of fact. *Id.* Because "name" is only one of several options, Plaintiff contends that use of plaintiff's name is not an element of a Section 43(a) claim. Similarly, because a trademark is encompassed by word, term, name, symbol, device, or combination of such elements, Plaintiff contends that Section 43(a) does not require use of plaintiff's mark. This position is buttressed by the plain language of Section 32(a), which demonstrates that the Lanham Act's drafters knew how to require use of a mark if they intended to. *See* 15 U.S.C. §

1114 (barring infringing use in commerce "of a registered mark."). Finally, Plaintiff contends

that an express false claim of affiliation is not an element, because the plain language of the

statute encompasses a misleading description or representation of fact that is likely to cause

confusion. *See* 15 U.S.C. § 1125.

### 2.    Cases interpreting Section 43(a) support Plaintiff's theory.

Plaintiff relies on Eleventh Circuit authority holding that a Section 43(a) unfair

competition claim does not depend on trademark infringement. *See Babbit, supra; see also*

*Miller's Ale House, Inc, v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1376

(S.D. Fla. 2010) *aff'd*, 702 F.3d 1312 (11th Cir. 2012) ("Even without a valid trademark . . . a

plaintiff may still have a Lanham Act cause of action for unfair competition . . . ."). Plaintiff

also relies on case law affording a broad construction to Section 43(a):

> One of the principal purposes of the 1946 revisions of the Lanham Act was to
> modernize the trade-mark statutes so that they will conform to legitimate
> present-day business practice. We are therefore reluctant to accord the language
> of s 43(a) a cramped construction, lest rapid advances in advertising and
> marketing methods outpace technical revisions in statutory language and finally
> defeat the clear purpose of Congress in protecting the consumer.

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981) (internal cites

omitted). As discussed below, Plaintiff believes that Defendant's business shares many

attributes of online directory scams (as described by the FTC), and falls within the category of

"rapid advances in advertising and marketing methods" that could outpace Section 43(a), if it

is not interpreted broadly. *See Montgomery v. Noga*, 168 F.3d 1282, 1300 (11th Cir. 1999)

(noting the "well-established principle that Section 43(a) should be broadly construed.").

Beyond the Eleventh Circuit, Plaintiff relies on the District of New Jersey's holding in

*Popeil Brothers, Inc. v. Morris,* No. 1250-69, 1972 WL 17704 (D.N.J. Dec. 20, 1972). In that

case, the defendant was found to have unfairly competed with the plaintiff, pursuant to Section

43(a) of the Lanham Act, although defendant never mentioned plaintiff's name or trademark.

*Id.* at *10-11. The plaintiff, Popeil, had distributed over a thousand television advertisements

of its product, a hair trimmer. *Id.* at *11. Retail outlets desired the hairtrimmer because of the

television advertisements. *Id.* The Popeil hairtrimmer's price, $2.99, reflected a return of the

television expenditures. *Id.* The defendant, Morris, priced its hairtrimmer at $1.49, but

promoted the product with sales banners that read "As advertised on T.V. for $2.99." *Id.* at *

12. The *Popeil* court held that Morris violated Section 43(a) by passing off its hairtrimmers as

Popeil hairtrimmers, even though Morris did not use Popeil's name or mark:

> [W]hen the Morrises allowed stores to represent that the Morris devices were
> "as advertised on T.V. at $2.99", **it was as if the Morrises were making the
> representation that their hair trimmers were the Popeil hair trimmers**, the
> only ones that were in fact being advertised on television. **Representations
> such as these are in direct violation of 15 U.S.C. 1125** since the consumer is
> looking for the gadget that television introduced him to and is misled by the
> representation to buy in fact another item.

*Popeil Bros., Inc. v. Morris*, No. 1250-69, 1972 WL 17704, at *12 (D.N.J. Dec. 20, 1972)

(emphasis added).

Equally important are the authorities that Plaintiff did not find after a diligent search.

Plaintiff found no case law interpreting Section 43(a) to require that Defendant use the

Plaintiff's mark or name, or expressly claim affiliation with the Plaintiff. Nor has Defendant

cited any such authorities.

### 3.    FTC cases and other agency material support Plaintiff's theory.

Plaintiff further relies on cases in which the Federal Trade Commission sought

injunctive relief against the type of business practices that Defendant engages in – falsely

suggesting a pre-existing relationship with the call recipient. Specifically, Plaintiff relied on the following unreported opinions, all dealing with directory listings that misled consumers by implying a pre-existing business relationship: *FTC v. Quebec, Inc.,* No. 2:05-cv-00265-TSZ (W.D. Wash 2006) (No. 2, 28); *FTC v. Canada, Inc.*, No. 1:09-cv-03158 (N.D. Ill. 2010) (No. 1, 20); *FTC v. Datacom Mkt'g, Inc.*, No. 1:06-cv-02574 (N.D.Ill. 2008) (No. 1, 66); *FTC v. Modern Tech., Inc.*, No. 1:13-cv-8257 (N.D. Ill. 2014) (No. 1, 33)).[6] Plaintiff also reviewed a pamphlet produced by the FTC titled "Small Business Scams", attached hereto as **Exhibit A**. The pamphlet identifies "The Directory Listing Scam" as follows:

> In this operation, con artists [contact] all business, claiming to **"verify"** or **"confirm"** a company's contact information for its listing in a business directory. Of course, there's no existing listing — and maybe not even a real business directory — but the employee who picked up the phone doesn't know that. Persuasive double-talkers bulldoze the employee into saying yes. Later, if the company complaints it didn't agree to the listing, the fraudsters may play back a tape of the call (which might have been doctored) as "proof."

Ex. A at 1 (emphasis added). Defendant's business appears to be an age-old scheme; here, there is an existing paid listing and business relationship, but the existing relationship is with Plaintiff, not Defendant. At the hearing, Plaintiff provided transcripts of calls during which Defendant advised the call recipient it was calling to "verify" or "confirm" Plaintiff's customer's contact information. *See, e.g.*, [Dkt. 29] at 79:10-16 (reading from the Jones Health Care transcript).[7] This Court found that Plaintiff provided evidence that Defendant implied a

---

[6] These filings are not available on Westlaw and were provided to this Court during the evidentiary hearing. The numbers in parentheses after each citation are docket numbers on CM/ECF. The first is a filing by the FTC that relates the underlying facts, and the second is the court's order granting a temporary injunction.

[7] Similar verification-or-confirmation language appears in the MacGregor Entertainment, Glenda Building, NYC Chic, DOJES Forensic transcripts previously provided to this Court. Plaintiff has not quoted the transcripts here because Defendant requested that this Court seal them.

pre-existing business relationship with Plaintiff's customers, and Plaintiff's customers may have been confused. [Dkt. 28] at 4.

### 4.   Consultations with other attorneys support Plaintiff's theory.

Plaintiff's counsel consulted with other commercial and trademark law attorneys who agree with Plaintiff's interpretation of Section 43(a) of the Lanham Act.

### C.   Plaintiff's factual contentions are not objectively frivolous.

Defendant fails to identify any unsupported factual contentions actually made by Plaintiff. Instead, Defendant simply mischaracterizes Plaintiff's position. *See, e.g.*, [Dkt. 30] at 1 (redefining "passing off" to mean "using the Web.com mark and name", then claiming that Plaintiff has made the factual contention of "passing off," as defined by Defendant). Defendant is not entitled to redefine Plaintiff's legal theory, which this Court correctly recognized is based on a misleading suggestion of affiliation.

To the extent that Defendant believes that its evidence refutes Plaintiff's claims, the Motion should have been filed as a motion to dismiss on the ground that Plaintiff failed to make certain factual allegations, such as Defendant using Plaintiff's name or mark – not a Rule 11 motion.  Defendant got it backwards as motions to dismiss and for Rule 11 violations are opposites: "The defendants' arguments stem, in part, from the plaintiff's failure to make certain factual allegations. This is the opposite of a Rule 11(b) (3) violation which would include making factual contentions that have no evidentiary support." *Deer v. Saltzman, Tanis, Pittell, Levin & Jacobson, Inc.*, No. 10-61588-CIV, 2011 WL 1526829, at *4 (S.D. Fla. Apr. 1, 2011) *report and recommendation adopted*, No. 10-61588-CIV, 2011 WL 1532064 (S.D. Fla. Apr. 20, 2011).

With respect to Plaintiff's Complaint Tracker, Defendant supports its Motion with Defendant's counsel's improper lay opinion about how the Complaint Tracker should be interpreted. At the hearing, Lisa Anteau, Senior Vice President of Sales for Plaintiff, testified about why it was created, what information it recorded, and how it was maintained. *See* [Dkt. 29] at 24:2-29-24. Briefly, the fact that a particular column was checked (or not checked) did not indicate that the phone call actually came (or did not come) from a particular source:

> Q.    [BY MR. CHES] And when we get a chance to look at a Complaint Tracker and the Court has the opportunity to enlarge it, the Court will be able to see that there's a column header that says: Did the caller mention Web.com? What does that mean? What is the purpose of that column?
>
> A.    [BY LISA ANTEAU] The purpose of that column is to really tell us as we look at it, did the caller – the caller who called our customer – did they mention Web.com or indicate that they were affiliated with Web.com during that transaction.
>
> Q.    If the box is checked, does it mean that the call came from Web.com?
>
> A.    Oh, no. Absolutely not. I mean, the information captured on that solicitation tracker is taken by our employees from feedback our customer give[s] us over the phone.
>
> Q.    And similarly, there's a box on the tracker that says: Did the caller mention USDirectory? If that box is not checked, does that mean that the call did not come from USDirectory?
>
> A.    No. What that means is the specific feedback of the individual customer
>
> (Objection made and overruled)
>
> A.    It just means that customer didn't indicate that at the time on the phone.

*See* [Dkt. 29] at 25:10-26:10. As Ms. Anteau testified, the complaint tracker was meant to track what customers reported to Web.com, and to determine which calls were related to Defendant based not only on what entities the customer reported the caller mentioned, but on the timing

when calls began, the frequency of calls, what was said to the customer, the nature of the charges,[8] and how that transaction took place. *See* [Dkt. 29] at 26:14-22. Defendant criticizes the Complaint Tracker because, on thirty occasions, Defendant's customers reported that the caller mentioned calling from Web.com, but the recordings provided contain no express reference to Web.com. [Dkt. 30] at 9. Defendant relies on this inconsistency to support its claim of impropriety by Plaintiff's counsel. However, the inconsistency is exactly what one would expect to see if Plaintiff's theory were correct — actual confusion by the call recipients as a result of Defendant's deceptive implication of a pre-existing relationship. This is why the call recipients complained to Web.com – they were confused as to who had called them.

Regarding Plaintiff's support for its factual contentions, the issue is whether Plaintiff had — or likely would have — "evidentiary support" at the time of filing its Motion, not whether Plaintiff would prevail. 1993 Comm. Notes. This Court's denial of Plaintiff's Motion does not establish that Plaintiff's claims were unsupported. *See id.* In fact, this Court found that Plaintiff submitted evidence that some of the disputed calls were directly tied to Defendant; and that Defendant implied a pre-existing relationship with Plaintiff's customers, instructed Plaintiff's customers to ignore other calls; and used "other examples of certain words or phrases" that may be problematic *see* [Dkt. 28] at 2 n. 2; *see also id.* at 4 (stating that "Web.com does provide evidence that several customers may have been confused about the nature of USDirectory's solicitations, and certain call center employees implied a pre-existing relationship with the business they contacted . . . ."). This Court was not persuaded that

---

[8] As this Court noted in its Order, Defendant often discussed its pricing model during calls. *See* [Dkt. 28] at 2 n. 2. Plaintiff compared Defendant's typical charges to the amounts identified in Plaintiff's customer complaints.

Plaintiff's evidence provided a basis for a preliminary injunction, an extraordinary remedy, but that is not cause to sanction Plaintiff. *Riccard*, 307 F.3d at 1294 (holding that "sanctions are warranted when a party exhibits a deliberate indifference to obvious facts," not merely because a party is denied relief).

## II.    The Motion improperly relies on hindsight, but Rule 11 imposes a standard of reasonableness under the circumstances at the time the motion was submitted.

Rule 11 imposes a standard of reasonableness under the circumstances "at the time the pleading, motion, or other paper was submitted." 1983 Comm. Notes. When evaluating whether the signer's conduct was reasonable, this Court must "avoid using the wisdom of hindsight." *Id.* But that is what Defendant requests this Court to do.

The crux of the Motion is that Defendant produced recordings that refuted Plaintiff's "passing off" contention. *See* [Dkt. 30] at 10 ("This is not a case of 'he said/she said,' where the evidence is subject to interpretation. USDirectory.com has provided recordings of calls which directly dispute Web.com's claims."). Plaintiff disagrees that the recordings refute Plaintiff's claims; as discussed, Defendant has grossly mischaracterized Plaintiff's legal theory, a mischaracterization that this Court observed and corrected during the hearing. *See* [Dkt. 29] at 45:19-46:7, quoted *infra*. However, even if this Court held that the recordings made Plaintiff's factual claims unsupportable, Defendant has not established a Rule 11 violation because the recordings were not reasonably available to Plaintiff until after Plaintiff's Motion was filed.

Defendant's recordings were unavailable to Plaintiff until Defendant provided them, which Defendant admits did not happen until after filing. [Dkt. 30] at 6 ("**Since filing**, Defendants provided the actual recordings to Plaintiff, proving that Plaintiff's claims are false.") (emphasis added). Defendant does not argue that Plaintiff should have known about

16

Defendant's call recordings at the time of filing. Defendant only conclusorily asserts that pre-filing it "made Plaintiff aware" of unspecified evidence which refuted Plaintiff's factual claims. Defendant does not explain what the evidence was, does not allege that Plaintiff had any opportunity to review the evidence, and does not cite any authority for the proposition that Plaintiff owed an ethical duty to accept Defendant's naked assertion that it had evidence that refuted Plaintiff's claims, especially in light of the fact that Plaintiff was still receiving customer complaints despite Defendant's assurance that it took corrective actions.

Plaintiff does not claim that its obligations are measured solely at the time of filing. *See id.* ("[A]n attorney who during a pretrial conference insists on a claim or defense should be viewed as 'presenting to the court' that contention and would be subject to the obligations of subdivision (b) measured as of that time."). However, the Motion does not allege any post-filing misconduct by Plaintiff,[9] and Plaintiff satisfied its obligations during the evidentiary hearing. Plaintiff was candid with this Court about what evidence Plaintiff did or did not have; and this Court clearly understood that Plaintiff's legal theory was not based on use of Web.com's mark or name:

> Mr. Spector:   Of that entire set of recordings, Your Honor, on none of those calls did the callers make any reference to Web.com, except for the —
>
> The Court:   **Well, what I think counsel has conceded in his earlier presentation** when he was explaining the basic problem, that in some cases, or most cases, **they never mention that**. That was never mentioned.
>
> Mr. Spector:   Well, that's a new —

---

[9] Defendant asks this Court to sanction Plaintiff for failing to withdraw or amend its Motion based on evidence disclosed post-filing. However, Rule 11 does not require Plaintiff to do so. *See* 1983 Comm. Notes ("The new language stresses the need for some **prefiling** inquiry . . . .") (emphasis added). Rule 11 "does not require a formal amendment to pleadings for which evidentiary support is not obtained", nor does it require "formal amendment of the pleadings to withdraw an allegation or denial." 1993 Comm. Notes.

> The Court:    They did [not] mention Web.com, but it was the way that it was done that would suggest — the timing, one, being a couple days after they did this, and then not saying that we're really from such-and-such and we got a better deal for you, which would probably be permissible under the circumstances.

[Dkt. 29] at 45:19-46:7. Further demonstrating that this Court understood Plaintiff's legal theory, this Court gave an example regarding telemarketers giving a false impression that they were with the consumer's credit card company without expressly claiming an affiliation or mentioning the company's name. *Id.* at 46:10-47:9.

### III.    The Motion is untimely because it was filed after this Court rejected Plaintiff's Motion.

Defendant improperly filed its Motion after this Court denied Plaintiff's Motion. "[T]he service and filing of a motion for sanctions must occur prior to final judgment or judicial rejection of the offending motion." *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008). Before the 1993 amendments were adopted, a Rule 11 motion could be made even after final judgment. *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997). However, the 1993 amendments modified Rule 11's timing by creating a 21-day "safe harbor," which bars sanctions unless the party who has received a sanctions motion fails to withdraw the challenged motion. *See id.* Because liability for sanctions is contingent on failure to withdraw, "a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn." *See id.* (quotation omitted). Thus, "if the court disposes of the offending contention before the twenty-one 'safe harbor' period expires, a motion for sanctions cannot be filed with or presented to the court." *Id.* Were the rule otherwise, the safe harbor provision would be meaningless. *Id.*

The Eleventh Circuit has adopted and extended the holding of *Ridder*. *See In re Walker*, 532 F.3d at 1309 (applying *Ridder* to a Bankruptcy Rule 9011 motion because Rule 9011 is

"substantially identical" to Rule 11). Like the *Ridder* court, the Eleventh Circuit held that permitting a motion for sanctions to be filed after judicial rejection of the offending motion would render the safe harbor provision a "mere formality." *Id.* Once the Court denies the offending motion, it is too late for the offending party to withdraw the challenged contention; thus, the sanctions motion cannot be filed regardless of when it was served. *See id.* at 1308-09 (affirming vacation of sanction even though movant filed more than twenty-one days after giving notice that he would seek sanctions).

Defendant's Motion is directed to Plaintiff's Motion. *See* [Dkt. 30] at 2 ("Defendants have shared this evidence with Plaintiff, yet Plaintiff has neither withdrawn its Motion nor amended it."), 6 ("It is unclear why Plaintiff has not withdrawn or modified its Motion in the face of these recordings."), 9 (attacking Plaintiff's "passing off" contention and Motion).[10] Before the Motion was filed, and before the 21-day safe harbor period had expired, this Court denied Plaintiff's Motion. As a matter of law, Defendant cannot prevail on its untimely Motion.

## IV.     Plaintiff should be awarded its reasonable expenses, including attorney's fees, incurred to respond to the Motion.

This Court may award Plaintiff its expenses, including attorney's fees, even though Plaintiff did not serve a cross motion under Rule 11:

> As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. **However, service of a cross motion under Rule 11 should rarely be needed** since under the revision the court may award to the person who prevails on a motion under Rule 11-- whether the movant or the target of the motion--reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.

---

[10] The Motion does not request withdrawal or amendment of Plaintiff's Complaint. *See* [Dkt. 30]. In addition, Rule 11 should not be used "to test the legal sufficiency or efficacy of allegations in the pleadings," because other motions are available for those purposes. 1993 Comm. Notes.

1993 Comm. Notes. And this Court should award Plaintiff its expenses, including fees, because Defendant filed a groundless Rule 11 motion for an improper purpose. Even though this Court clearly explained Plaintiff's legal theory to Defendant at the evidentiary hearing, Defendant continues to claim, without factual or legal support, that Plaintiff's claim requires use of Plaintiff's mark or name. Furthermore, Defendant continues to attack Plaintiff's Complaint Tracker, even though Plaintiff presented undisputed testimony from Ms. Anteau that refuted Defendant's personal interpretation of the document. The Motion was also untimely filed, improperly deprives Plaintiff of Rule 11's safe harbor, and improperly seeks to penalize Plaintiff for not amending or withdrawing its Motion, even though Rule 11 expressly provides that Plaintiff is not required to do so.

This Court can infer from the circumstances, and from the defects in the Motion, that Defendant served the Motion for improper purposes: "to exact an unjust settlement," as the Motion was served *one day* before a scheduled settlement conference, or "to intimidate an adversary into withdrawing contentions that are fairly debatable," as the Motion was served only one week prior to the evidentiary hearing (but more than three months after Plaintiff filed the challenged Motion). *See* 1993 Comm. Notes. Defendant pointlessly increased the cost of litigation to complain about a Motion that this Court already denied and contentions that were addressed at the evidentiary hearing.

For the foregoing reasons, Plaintiff Web.com requests this Court to enter an Order (1) denying Defendant's Motion for Sanctions and (2) awarding Plaintiff its reasonable expenses, including attorney's fees, incurred to respond to Defendant's Motion.

Dated: March 24, 2015

**HOLLAND & KNIGHT LLP**

s/Jeremy J. Ches_____
Jeremy J. Ches
Florida Bar No. 649570
jeremy.ches@hklaw.com
Ben Z. Williamson
Florida Bar No. 87454
ben.williamson@hklaw.com
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
(904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 24, 2015, I filed the above Reply via CM/ECF, which will serve an electronic copy of this Response to all parties.

s/Jeremy J. Ches_____
Attorney

21